Pearson, J.
 

 On the trial of a slave for felony, is the mas-
 
 *349
 
 a competent witness in behalf of the prisoner ? The question has never been decided in this State. Of course there is no case in point in the English books. Many of the slaveholding' States have statutes giving a compensation to the master, so that the question could not arise in these States, and we are not aware of a decision in any of the States ; so we are left to solve the question by a recurrence to principle.
 

 The rule, that no one is competent as a witness in behalf of a party in whose success he has a pecuniary interest, is based on the idea, we are all so frail—so much under the influence of our own interest, that we are not to be trusted when it is at stake ; for, the love of truth, the pride of character, the obligation of an oath, the searching power of cross-examination, and the scrutiny of a jury, are not sufficient guarantees against the blighting effect of its influence.
 

 "We are told, the Common Law is “the perfection of reason ;” it is -the wisdom, not of one man, but of many men put together. That this small estimate of the integrity of mankind should be adopted by the “ wisdom of ages ” as a foundation for a rule of evidence, is most humiliating; and it is a relief to know, that this conclusion is not an unbiased judgment upon the naked question, but has, in a great measure, been controlled and brought about by collateral circumstances. Any one who reads the “State Trials,” and the old writers upon evidence, Gilbert aiid McNally, will find that the rules of evidence were longer in being settled than any other part of the common law, and will not be surprised that Lord Mansfield, in
 
 Low
 
 v. Joliffe, 1 Wm. Black. 366, declared on a trial at bar, that “ the Court did not sit there to take its rules of evidence from Siderfin and Keble.” The civil law carried the rules df exclusion much further than pecuniary interest, excluded father and son, patron and_client, guardian and ward, &c., mutually, from giving evidence for each other. Many of the old rules of evidence “ were drawn from this quivérj” and the common law Judges unconsciously allowed the subject to be influenced by the doctrines of the civil law, and failed to discriminate between rules of evidence fit and
 
 *350
 
 proper for a fixed tribunal, where all questions of law and fact were decided by a single Judge, and the evidence is in writing, where the oath of one man looks as good as another, and a trial by jury, where the witness gives his testimony face to face, so that the jury may “mark his manner,” and pass upon his credibility. See
 
 State
 
 v. Williams, 2 Jones’ Rep. 257;
 
 Bottoms
 
 v.
 
 Kent,
 
 ante 154; Best on the principles of evidence.
 

 There was still another circumstance which embarrassed the subject. In early times the jury were witnesses, and gave the verdict upon their own knowledge of the facts. Of course it was then proper to exclude not only those who had pecuniary interest, but all the “kith and kin” of both parties. In the course of time this feature of jury trials was changed, and the verdict was to be rendered according to the evidence given to the jury by witnesses. This was the time for making a corresponding change in the rules of evidence ; but it is hard to get rid of old notions, particularly in the action of Courts. After much struggling, the rule which excluded as witnesses parent and child, and others whose connection raised a presumption of bias from affection and other causes, was modified so as to allow it to go their credit and not to their competency; but the exclusion from pecuniary interest was adhered to, and after many conflicts and changes, was settled in Lord Kenyon’s time within these narrow limits—the interest must be a
 
 direct, certain, legal, pecunicvnj interest in the event of the case. Best
 
 v.
 
 Baker,
 
 3 T. R. 27;
 
 Smith
 
 v.
 
 Prager,
 
 7 T. R. 60. Even under these restrictions it was felt that the rule was still liable to many objections ; although it excludes falsehood, in as many cases it excludes the truth. To define by a general rule the influence which interest in the event of a case, will exercise on the mind of a given individual, is beyond all human power; on some, the slightest interest will act so as to produce perjury; on others, the greatest will be powerless. There was also necessarily a degree of inconsistency and incongruity in applying it; an heir apparent is a competent witness for his father, although the whole es
 
 *351
 
 tate be at stake, but he is incompetent if he has a pecuniary interest to the amount of one cent. It Avas impossible to fix any limit in regard to the amount; so of necessity, according to the rule, any interest,
 
 however
 
 small, Avill exclude. As a salvo to this, it is held that the witness may make himself competent by executing a release, which the party is obliged to accept, and as a further salvo, it is said time, and again, (as if the rule needed some apology,) where there is any doubt as to its application, the Court will
 
 lean to
 
 the admisibility of the evidence, and alloAv it to affect the credit and not the competency of the witness. Ry a recent statute in England, the rule of exclusion on the ground of interest is abolished, and in all cases the matter goes
 
 to the credit.
 

 These remarks are made, not with a view of intimating that the rule is not too well established here to be abolished without the aid of the Legislature, but simply for the purpose of defining its limits and of tracing it back to its origin, so as to support the position, that it ought not to be extended to neAv cases, but be confined to cases where it has been already applied, and where the principle on which it is founded exactly fits the case.
 

 Is there nothing in the difference between a trial where property is involved, and a trial where human life is at stake, to make a distinction in the application of this rule, so far as it relates to a witness called in behalf of the prisoner ? The idea, when a prisoner calls a witness to prove his innocence, who, it may be, is the only person on earth to whom a fact is known that will save his life, that he must be repulsed by the cold announcement, “ he is Amur master—he has an interest in saving your life, and at all events he is liable for the costs of this prosecution, and, therefore, has a pecuniary interest Avhich makes him incompetent, so he cannot be heard in your behalf,” shocks all the best feelings of our nature, and extorts, the exclamation, “ This ought not to be a rule of evidence !”
 

 Frail as human nature may be, dollars and cents should not be weighed in the balance with life. It cannot be presumed that the “almighty dollar” is so controlling in its in
 
 *352
 
 ■flueuce, as to overcome all other considerations. Our investigation satisfies us that the rule of exclusion, because of pecuniary interest, has not boon applied to a case like the present, and we are clearly of the opinion, that the principle of the rule is not applicable. Henderson, C. J., than whom, I will take occasion to say, there has not been a more profound thinker, or one of whom it can with more justice be said,
 
 “felix gui fotruit rerwn eognoscere causas,”
 
 since the days of Haywood,
 
 (State
 
 v.
 
 Kimbrough,
 
 2 Dev. 438,) expresses the opinion, that in a capital case the rule which excludes a witness on the ground of pecuniary interest, does not apply, and that one who would become entitled to an estate at the death of the prisoner, was a competent witness against him. lie says, “ it is admitted that where property only is at stake, where that only is the subject of controversy, it is the presumption of law that interest in the event, will, with most men, overcome the love of truth. The law, therefore, acting upon that presumption, excludes
 
 all
 
 who are so interested, from being witnesses
 
 ;
 
 as general rules are formed for majorities ; but we are unwilling to acknowledge that where life is at stake, where the injury inflicted by the perjury is a murder, the most cold-blooded and deliberate which can be imagined, that the law makes any such presumption. Although there are beings in whom interest (I mean pecuniary interest) would thus operate, they
 
 are
 
 rare exceptions to the nature of man, and general rules are not predicated on exceptions.”
 

 The testimony of the master cannot be excluded without manifest inconsistency. The slave is put on trial as a
 
 human
 
 being; entitled to have his guilt or innocence passed on by a jury. Is it not inconsistent, in the progress of the trial, to treat him as property, like a chattel,—a horse, in the value of which the owner has a pecuniary interest which makes him incompetent as a witness ? And as respects the master, is it not enough, that in the exercise of the right of eminent domain, his property should be forfeited to the public without compensation, and he should be made liable for the costs ? Must insult be superadded by saying to him, “you have a
 
 *353
 
 pecuniary interest, and, therefore, cannot be trusted ; so, we must also take from you the poor privilege of being heard in behalf of your slave, and of having your credit passed upon by the jury ?”
 

 So much upon the principle of the rule; let us now look to analogy. A father has an interest in the services of his child until he arrives at the age of twenty-one; it is a pecuniary interest which the law protects by giving an action
 
 “per quod servit/hmi
 
 amisit,” (indeed it is the gravamen of the action for seduction,) but the father is a competent witness in behalf of his child; so a master has a pecuniary interest in the service of his apprentice, indeed he has a property in him, qualified, it is true, for he cannot assign it, but he can maintain an action for harboring him or otherwise depriving him of his services; yet, a master is a competent witness in behalf of an apprentice who is on trial for an offence which may subject him to imprisonment, transportation or death, in cither of which events the master will suffer pecuniary loss. Where, then, is the principle or the analogy which makes the master of a slave incompetent ? What is to be the limit of the rule? Is one who has a negro hired for a year, incompetent to give testimony in his behalf, because, by a conviction, lie will lose his services ?
 

 Our attention was called in the argument, to
 
 State
 
 v. Charity, 2 Dev. 543. The
 
 decision
 
 is, that a master cannot be offered by the prosecution to prove the confessions of a slave. Ruffin, J., puts his opinion on the ground of a personal privilege of the master not to be compelled to give evidence against his interest. Hall, J., puts his opinion on the ground that that the master is a party, or a
 
 quasi
 
 party, to the record, and so cannot be compelled'to give evidence. Henderson, C. J., puts his opinion on the ground, that confessions of a slave to his master ought to be excluded, on a presumption that they are not voluntary, owing to the relation of master and slave. It is true, Ruffin J., expresses an opinion, that a master is not a competent witness for a slave on account of his pecuniary interest; but Henderson expresses an opinion that he is
 
 *354
 
 competent, and the rule of exclusion for interest does not apply ; so, there is dictum against dictum, which, as in cases of estoppel
 
 “
 
 leaveth the matter at large.” The decision in regard to the point presented by the case, is much weakened by the fact, that the Judges do not agree as to the ground on which it is put. Rukfin, after arguing the question, says: “I think, therefore, a master cannot be a witness for his slave. It follows he ought not to be forced on the other side.” Why it “ follows ” is not stated. If we assume that a master is incompetent to give evidence on the side of his interest, for his slave, it
 
 “
 
 follows ” that he would be incompetent to give evidence on the side of his interest against his slave, (if such a case could be supposed.) But it does not “ follow' ” that he would be incompetent to give evidence
 
 against, Ms interest,
 
 either for or against the slave, or, that he ought not to be compelled to give evidence, although against his interest; for it is settled that one may be compelled to give evidence against his interest, unless he will incur a forfeiture or penalty. On the whole,
 
 “
 
 Charity’s case ” leads to no satisfactory result.
 

 In our case, the
 
 wife
 
 of the owner was offered as a witness; we have treated it as presenting the same question as if tins master had been offered. If there be any distinction, it is not necessary to inquire into it.
 

 It has been suggested, that it should appear in the statement of the case, what the witness was called to prove, so as to show that her evidence was material. We should regret exceedingly to be obliged, because of an omission of this kind, to deprive the prisoner of another chance for his life, as we know how cases are made up for this Court from the notes of the Judges; but we think the suggestion is not well founded. Where a witness is objected to, and rejected on the ground of incompetency, we assume that the witness would have been rejected, no matter how material the evidence might have been. It is only where evidence is ruled out on account of the
 
 "natter,
 
 that it is necessary to set out in the statement of the
 
 *355
 
 case, what the party expected or offered to prove, so as to enable the Court to judge of its materiality.
 

 Pee Curiam.
 

 Judgment reversed, and
 
 venire de novo.